UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMORY BOYD, JR., QUINTON HANCOCK, and NICHOLOS PAGE,<br><br>          Plaintiffs,<br><br>     v.<br><br>FEATHER RIVER COMMUNITY COLLEGE DISTRICT, MERLE TRUEBLOOD, JOSH WHITE, and JAMES JOHNSON,<br><br>          Defendants. | Case No. 2:11-CV-0231 JAM-EFB<br><br><u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS</u> |

This matter is before the Court on Defendants' Feather River Community College District ("FRC"), James Johnson ("Johnson"), Merle Trueblood ("Trueblood") and Joshua White ("White") (collectively "Defendants") Motion to Dismiss (Doc. #12) Plaintiffs' Emory Boyd, J.R. ("Boyd"), Quinton Hancock ("Hancock") and Nicholos Page ("Page") (collectively "Plaintiffs") First Amended Complaint ("FAC") (Doc. #7). Defendants seek to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs oppose the motion (Doc. #15). For the reasons set forth below, Defendants' motion is DENIED.[1]

## I. FACTUAL ALLEGATIONS

This action arises from allegations of racial discrimination against African American football players at FRC. Plaintiffs are African American, and allege that they were recruited to play football on the FRC football team, paid out-of-state tuition, and did all that was required of them to participate in FRC's athletic program as members of the football team. Am. Compl., ¶¶ 10-13.

The FAC alleges that Plaintiffs knew that many players previously on the team received athletic scholarships to four year colleges, and Plaintiffs understood that upon successful completions of the FRC program (both academically and on the football field) they would receive the best efforts of the football coaching staff to place them at four year colleges with scholarships. Am. Compl., ¶ 17. However, the FAC alleges that Plaintiffs suffered racially discriminatory treatment from White (the Assistant Coach), including being unfairly criticized, personally insulted, verbally abused, and taunted. Am. Compl., ¶ 20. Plaintiffs allege that Johnson (the Head Coach) and White favored less committed and less skilled white players over their African American counterparts, gave white players more playing time and more opportunities on the field, and treated them in a more favorable and less hostile manner. Am. Compl., ¶ 19. The

---

[1] This matter was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 23(g). Oral argument was originally scheduled for September 7, 2011.

FAC alleges that White's racist behavior went so far as to include physical attacks on African American students, Am. Compl., ¶ 22, calling African American students derogatory names, Am. Compl., ¶ 25, and attempting to provoke fights with them. Id. Additionally, Plaintiffs allege that Trueblood (the FRC Athletic Director) and Johnson were made aware of White's racially hostile conduct, but failed to take corrective action. Am. Compl., ¶ 21. Instead, between 2009-2010, Defendants changed FRC's football team from predominantly black to predominantly white, Am. Compl., ¶¶ 44-50, and in the course of doing so unfairly cut Plaintiffs from the football team in order to replace them with white players. Am. Compl., ¶ 48. Plaintiffs allege that they were eligible both academically and athletically to return to play football for FRC in the 2010-2011 season. Am. Compl., ¶ 38. Plaintiffs bring claims for violation of Title VI, 42 U.S.C. § 1983 and 42 U.S.C. § 1981. Plaintiffs seek declaratory relief, compensatory, economic, and punitive damages, and attorneys' fees. Defendants move to dismiss all of Plaintiffs' claims in the FAC, for failure to plead sufficient facts to support the claims.

## II.  OPINION

### A.  Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the

3

plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

  B. Claims for Relief

    1. Violation of Title VI- Racially Hostile Educational Environment

The first claim for relief, brought against FRC, asserts that Plaintiffs were subjected to a racially hostile educational environment, in violation of Title VI, and that FRC did not take steps to end the harassment. Defendants argue that the claim should be dismissed because Plaintiffs failed to plead facts showing that they were harassed because of their race. Further

4

1  Defendants contend that the allegations of the FAC do not show
2  severe or pervasive harassment, rather, the decision to drop
3  certain players from the team, or give certain players more time
4  on the field, are personnel management decisions, not instances
5  of discrimination.  Lastly, Defendants argue that there are no
6  allegations showing that FRC was deliberately indifferent to the
7  allegations of racial harassment, or that the harassment
8  interfered with Plaintiffs' educational pursuits.
9      Title VI mandates that "No person in the United States
10 shall, on the ground of race, color, or national origin, be
11 excluded from participation in, be denied the benefits of, or be
12 subjected to discrimination under any program or activity
13 receiving Federal financial assistance."  Title VI, 42 U.S.C.
14 § 2000d.
15     To state a claim for damages under Title VI, a plaintiff
16 must allege that (1) the entity involved is engaging in racial
17 discrimination; and (2) the entity involved is receiving federal
18 financial assistance.  <u>Davison ex rel. Sims v. Santa Barbara</u>
19 <u>High School Dist.</u>, 48 F.Supp.2d 1225, 1229 (C.D. Cal. 1998).  A
20 plaintiff need not plead that he was an intended beneficiary of
21 the federally funded program.  <u>Id.</u>  While a plaintiff must prove
22 intent at trial, it need not be plead in the complaint.
23 <u>Monteiro v. The Tempe Union High School Dist.</u>, 158 F.3d 1022,
24 1026 (9th Cir. 1998).  Courts look to the Department of
25 Education's guidance on Title VI, which mandates that the
26 following elements establish a violation of Title VI under the
27 hostile environment theory: (1) A racially hostile environment
28 existed; (2) the recipient had actual or constructive notice of

the racially hostile environment; and (3) the recipient failed to respond adequately to redress the racially hostile environment. <u>See</u> e.g. <u>Davison</u>, *supra*; <u>Moneteiro</u>, 158 F.3d at 1033. Racial harassment creates a hostile environment if it is sufficiently severe that it would interfere with the educational program of a reasonable person of the same age and race as the victim. <u>Monteiro</u>, 158 F.3d at 1033. Racist attacks need not be directed at the complainant in order to create a hostile educational environment. <u>Id.</u>

Here, the FAC has alleged that FRC receives federal funding, Am. Compl., ¶ 11, and Plaintiffs have alleged that FRC was engaging in racial discrimination, Am. Compl., ¶¶ 19-56. The FAC alleges that FRC had notice of the discrimination, Am. Compl., ¶ 21; ¶ 35, but failed to take steps to correct the problem, Am. Compl., ¶¶ 34-36.

Defendants contentions that the alleged discrimination is not sufficiently severe and pervasive, and that Plaintiffs have not sufficiently shown a racist intent behind the hostility, are premature. A plaintiff does not need to prove intent until trial. <u>Monteiro</u>, 158 F.3d at 1026. Plaintiffs have alleged that the harassment and discrimination was racially motivated, Am. Compl., ¶ 100, and further, the Court can infer that Plaintiffs were being harassed based on their race from the wealth of allegations in the FAC. At this early stage in the pleadings, the allegations of inferior treatment of African American football players and a purging of African Americans from the football team, coupled with the swearing, name-calling and general hostility aimed at Plaintiffs, are sufficient to show

severe and pervasive racial discrimination for a hostile educational environment claim.

Defendants also argue that the harassment did not interfere with Plaintiffs' education and only affected Plaintiffs ability to play on the football team.  However, the FAC contains sufficient allegations that the harassment and discrimination occurred at FRC and resulted in an environment permeated by racial hostility, see e.g., Am. Compl., ¶ 27, affected Boyd's ability to receive school credit for football courses, Am. Compl., ¶ 66, and eventually led to Boyd dropping out, Page taking online classes in South Carolina rather than stay at FRC, and Hancock completing the academic program but like Boyd and Page, losing the ability to pursue football scholarships at four-year colleges.  These allegations are sufficient to show that the hostile environment at FRC interfered with Plaintiffs' education.  Plaintiffs have alleged sufficient facts to state a claim for a racially hostile educational environment. Accordingly, the motion to dismiss the first claim for relief is DENIED.

        2.   <u>Violation of Title VI- Racial Discrimination in Education</u>

The second claim for relief, brought against FRC, alleges that FRC discriminated against Plaintiffs based on their race. Plaintiffs assert that this discrimination was intentional, and is evidenced by the deliberate change of the football team from majority black to majority white, the verbal abuse and discrimination directed at African American football players, and FRC's deliberate indifference to the complaints of racism

7

and discrimination.  Defendants and Plaintiffs offer the same arguments for and against this claim as were made for and against the first claim for relief.  As discussed above, the Court finds that the FAC sufficiently alleged race discrimination in violation of Title VI.  Accordingly, the motion to dismiss the second claim for relief is DENIED.

### 3. Violation of 42 U.S.C. § 1981- Intentional Discrimination in the Making of a Contract

The third claim for relief, brought against Trueblood and Johnson, asserts that Trueblood and Johnson interfered with Plaintiffs' ability to make and enforce contracts, in violation of 42 U.S.C. ¶ 1981.  Plaintiffs allege that they paid tuition to FRC for educational services and in return FRC entered into a contractual relationship to provide access to FRC programs, activities and instruction.  Am. Compl., ¶ 117.  Because of Trueblood and Johnson's malicious conduct in cutting them from the football team, this violated the contract formed between Plaintiffs and FRC.  Plaintiffs argue that when they entered this contractual relationship with FRC, they expected equal opportunity to be able to participate fully in the college's athletic program on the same terms as the college's non-black students.  In the past, the policy was to accept all returning players who were academically eligible. Am. Compl., ¶ 50. Trueblood and Johnson had the authority from FRC to recruit or reject student athletes for the football team, and used this authority to change the usual policy in a racially discriminatory manner, preventing Plaintiffs from returning to the football team and obtaining the benefits that they expected

from attendance at FRC.

Defendants contend that Plaintiffs have not alleged (and cannot allege) that they had a contract to play football, and therefore, being cut from the team did not violate any contract rights. Because the FAC alleges that Plaintiffs were told at the end of the academic year that they would be contacted if they were invited back to play on the team a second year, Defendants assert that this clearly shows the lack of either an express or implied contract involving participation on the football team. Plaintiffs' payments to FRC were in exchange for academic instruction, and Defendants note there are no allegations that they were denied academic instruction.

42 U.S.C. § 1981 provides:

> That all persons shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. The statute defines, makes and enforces contracts to include the making, performance, modification and termination of a contract, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

Flores v. Von Kleist, 739 F.Supp.2d 1236, 1256 (E.D. Cal. 2010) (internal citations omitted). To state a claim under Section 1981 a plaintiff must identify an "impaired contractual relation," by showing that intentional racial discrimination prevented the creation of a contractual relationship or impaired an existing contractual relationship. Schiff v. Barrett, 2010 WL 2803037, *4 (E.D. Cal. July 14, 2010) (internal citations omitted). A contract for educational services is a "contract" for purposes of Section 1981. Runyon v. McCrary, 427 U.S. 160, 172 (1976); Gratz v. Bollinger, 539 U.S. 244, 275 n.23 (2003). Section 1981's protection extends to college athletics. Pryor

v. National Collegiate Athletic Ass'n., 288 F. 3d 548 (3rd. Cir. 2002).  In Pryor, the Third Circuit held that the plaintiffs had stated a claim under Section 1981 when they alleged that the National Collegiate Athletic Association's rules regarding academic eligibility to receive athletic scholarships was discriminatory towards African American student-athletes and interfered with their rights under contract.  Because of the alleged discriminatory academic eligibility rule adopted by the NCAA, the plaintiffs in Pryor were unable to reap the benefits of their contracts, as they were prohibited from playing a sport during their freshman year and consequently denied their promised athletic scholarships.  However, the plaintiffs in Pryor had actually signed contracts (National Letters of Intent) to play a sport at their respective colleges and receive an athletic scholarship, therefore Defendants argue that it is distinguishable from the present case.  While Plaintiffs may have believed that they would be invited back to play football for a second year, the FAC does not allege that any contract to that effect existed.  Nor have Plaintiffs alleged that they were receiving athletic scholarships to play football at FRC.  Further, Plaintiffs do not allege that they were denied admission to FRC or denied academic instruction.

  Plaintiffs do however allege that because of a change in policy (the decision not to invite back all academically eligible football players to be on the team) they were denied the benefits of the contract they formed with FRC, in which FRC, Johnson and Trueblood contracted to provide equal opportunities and benefits to Plaintiffs.  Am. Compl., ¶ 54.  Instead, the

10

team roster was limited and Plaintiffs were cut as part of an intentional, racially discriminatory, effort by Defendants to reduce the number of African American football players on the FRC team. Am. Compl., ¶ 51. These allegations are sufficient at this stage of the pleadings to show that Plaintiffs were denied the benefits that they contracted for. The Court has already found that Plaintiffs have sufficiently alleged that Defendants had intent to discriminate under Title VI, and the intentional discrimination analysis is the same under Title VI and Section 1981. <u>Pryor</u>, *supra*. Accordingly, Plaintiffs have sufficiently stated a claim for violation of Section 1981. The motion to dismiss the third claim for relief is DENIED.

    4. <u>Violation of 42 U.S.C. § 1983- Equal Protection Clause of the Fourteenth Amendment</u>

The fourth claim for relief, brought against Trueblood and Johnson, alleges that Trueblood and Johnson violated Plaintiffs rights under the Equal Protection clause of the Fourteenth Amendment, by treating black student-athletes differently than white student-athletes. The FAC alleges that African American student athletes were treated worse than non-black athletes. Specifically, Trueblood is alleged to have announced his intention to "change the face" of the football team, desiring fewer African American and more whites on the team. Am. Compl., ¶ 45. Trueblood, along with Johnson, are alleged to have implemented a policy of ridding the team of African American players (including Plaintiffs) and replacing them with white players. Am. Compl., ¶¶ 45-50. Plaintiffs assert that this was done with the intent to discriminate against African Americans.

As a result of the discrimination, Plaintiffs allege they suffered emotional distress and anxiety.

Defendants argue that the allegations against Trueblood and Johnson are insufficient to show purposeful acts of discrimination. Simply because more African American football players were cut from the team than football players of other ethnicities, Defendants argue this does not show intentional discrimination giving rise to an equal protection claim.

To prevail in a Section 1983 civil action against state actors for the deprivation of:

> Rights, privileges, or immunities secured by the Constitution and laws, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Accordingly, the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States.

Thornton v. City of St. Helens, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (internal citations omitted).

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr, Inc. 473 U.S. 432, 439 (1985) (internal citations omitted). To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff "must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a

protected class." <u>T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist.</u>, 2009 WL 1748793, at *8 (E.D. Cal. Jan. 18, 2009).  A plaintiff may satisfy this showing by alleging four separate elements: (1) that the defendants treated plaintiff differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification.  <u>Id.</u>

At this stage in the pleadings, when the Court must accept as true the allegations of the FAC and draw all reasonable inferences in Plaintiffs' favor, the FAC sufficiently alleges a violation of Section 1983.  Plaintiffs have alleged that they were discriminatorily cut from the team, along with numerous other African American players, and that white students were not rejected from the team in this manner.  Am. Compl., ¶¶ 46-48. Plaintiffs have alleged that the discrimination was intentional, and the allegations of the FAC regarding the high number of black students cut from the team in comparison to the number of white students cut from the team supports the allegations of discrimination in violation of the equal protection clause. Accordingly, the motion to dismiss the fourth claim for relief is DENIED.

      5.   <u>Violation of 42 U.S.C. § 1981- Intentional Discrimination in the Making of a Contract</u>

The fifth claim for relief, brought against White, alleges that White's discriminatory treatment of African American student-athletes violated the Plaintiffs' contract rights under

Section 1981.  Plaintiffs allege that when they paid tuition to FRC for educational services, FRC, and by extension White, entered into a contractual relationship with each plaintiff. Am. Compl., ¶ 128. In rendering these services in a discriminatory, harassing and hostile manner towards African American students, White violated Section 1981's mandate against discrimination in the making and enforcement of contracts.  Am. Compl., ¶¶ 129-131.  Defendants raise the same arguments against this claim for relief as were raised against the third claim for relief, that no contract to play football existed.

However, the claim against White is not that he denied Plaintiffs the ability to play football, but that when they participated in FRC's football program he intentionally treated them with racial hostility and discrimination.  As discussed above, a contract for purposes of Section 1981 for services exists between schools and the students.  <u>Runyon</u>, 427 U.S. at 172; <u>Gratz</u>, 539 U.S. at 275 n.23.  White's discrimination and harassment impaired an existing contractual relationship, preventing Plaintiffs from full and equal access to the benefits of their contracts with FRC.  Plaintiffs have alleged sufficient facts to state a claim that White violated their rights under Section 1981, accordingly, the motion to dismiss the fifth claim for relief is DENIED.

      6.   <u>Violation of 42 U.S.C. § 1983- Equal Protection Clause of the Fourteenth Amendment</u>

The sixth claim for relief, brought against White, alleges that by intentionally treating black students differently and worse than non-black students, White violated the equal

14

Protection Clause of the Fourteenth Amendment.  Defendants raise the same arguments for dismissal of the sixth claim for relief that they raised for dismissal of the fourth claim, that Plaintiffs fail to show intentional discrimination.  However, as already discussed above, the allegations against White are sufficient to show intentional discrimination.  The allegations meet the necessary elements of an equal protection claim, as discussed in the Court's analysis of the fourth claim. Accordingly, the motion to dismiss the sixth claim for relief is DENIED.

### III. ORDER

For the reasons set forth above, the motion to dismiss is DENIED. Defendants shall file their Answer to the First Amended Complaint within twenty (20) days of this Order.

IT IS SO ORDERED.

Dated: October 20, 2011

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE