UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EMORY BOYD, JR., QUINTON HANCOCK, and NICHOLOS PAGE, | ) ) ) | Case No. 2:11-CV-0231 JAM-EFB |
| | ) | ORDER DENYING DEFENDANTS' |
| Plaintiffs, | ) | MOTION TO DISMISS |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| FEATHER RIVER COMMUNITY COLLEGE DISTRICT, MERLE TRUEBLOOD, JOSH WHITE, and JAMES JOHNSON, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Feather River Community College District ("FRC"), James Johnson ("Johnson"), Merle Trueblood ("Trueblood") and Joshua White ("White") (collectively "Defendants") Motion to Dismiss (Doc. #12) Plaintiffs' Emory Boyd, J.R. ("Boyd"), Quinton Hancock ("Hancock") and Nicholos Page ("Page") (collectively "Plaintiffs") First Amended Complaint ("FAC") (Doc. #7). Defendants seek to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

1  Plaintiffs oppose the motion (Doc. #15). For the reasons set

2  forth below, Defendants' motion is DENIED.[1]

3

4                    I.   FACTUAL ALLEGATIONS

5       This action arises from allegations of racial

6  discrimination against African American football players at FRC.

7  Plaintiffs are African American, and allege that they were

8  recruited to play football on the FRC football team, paid out-

9  of-state tuition, and did all that was required of them to

10  participate in FRC's athletic program as members of the football

11  team.  Am. Compl., ¶¶ 10-13.

12      The FAC alleges that Plaintiffs knew that many players

13  previously on the team received athletic scholarships to four

14  year colleges, and Plaintiffs understood that upon successful

15  completions of the FRC program (both academically and on the

16  football field) they would receive the best efforts of the

17  football coaching staff to place them at four year colleges with

18  scholarships.  Am. Compl., ¶ 17.  However, the FAC alleges that

19  Plaintiffs suffered racially discriminatory treatment from White

20  (the Assistant Coach), including being unfairly criticized,

21  personally insulted, verbally abused, and taunted.  Am. Compl.,

22  ¶ 20.  Plaintiffs allege that Johnson (the Head Coach) and White

23  favored less committed and less skilled white players over their

24  African American counterparts, gave white players more playing

25  time and more opportunities on the field, and treated them in a

26  more favorable and less hostile manner.  Am. Compl., ¶ 19.  The

27  _____

28  [1] This matter was determined to be suitable for decision without
oral argument.  E.D. Cal. L.R. 23(g).  Oral argument was originally
scheduled for September 7, 2011.

1  FAC alleges that White's racist behavior went so far as to
2  include physical attacks on African American students, Am.
3  Compl., ¶ 22, calling African American students derogatory
4  names, Am. Compl., ¶ 25, and attempting to provoke fights with
5  them.  Id.  Additionally, Plaintiffs allege that Trueblood (the
6  FRC Athletic Director) and Johnson were made aware of White's
7  racially hostile conduct, but failed to take corrective action.
8  Am. Compl., ¶ 21.  Instead, between 2009-2010, Defendants
9  changed FRC's football team from predominantly black to
10 predominantly white, Am. Compl., ¶¶ 44-50, and in the course of
11 doing so unfairly cut Plaintiffs from the football team in order
12 to replace them with white players.  Am. Compl., ¶ 48.
13 Plaintiffs allege that they were eligible both academically and
14 athletically to return to play football for FRC in the 2010-2011
15 season.  Am. Compl., ¶ 38.  Plaintiffs bring claims for
16 violation of Title VI, 42 U.S.C. § 1983 and 42 U.S.C. § 1981.
17 Plaintiffs seek declaratory relief, compensatory, economic, and
18 punitive damages, and attorneys' fees.  Defendants move to
19 dismiss all of Plaintiffs' claims in the FAC, for failure to
20 plead sufficient facts to support the claims.

21

22                        II.  OPINION

23      A.  Legal Standard

24      A party may move to dismiss an action for failure to state
25 a claim upon which relief can be granted pursuant to Federal
26 Rule of Civil Procedure 12(b)(6).  In considering a motion to
27 dismiss, the court must accept the allegations in the complaint
28 as true and draw all reasonable inferences in favor of the

1  plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

2  overruled on other grounds by Davis v. Scherer, 468 U.S. 183

3  (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  Assertions that

4  are mere "legal conclusions," however, are not entitled to the

5  assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

6  (2009), (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

7  555 (2007)).  To survive a motion to dismiss, a plaintiff needs

8  to plead "enough facts to state a claim to relief that is

9  plausible on its face." Twombly, 550 U.S. at 570.  Dismissal is

10  appropriate where the plaintiff fails to state a claim

11  supportable by a cognizable legal theory.  Balistreri v.

12  Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

13       Upon granting a motion to dismiss for failure to state a

14  claim, the court has discretion to allow leave to amend the

15  complaint pursuant to Federal Rule of Civil Procedure 15(a).

16  "Dismissal with prejudice and without leave to amend is not

17  appropriate unless it is clear . . . that the complaint could

18  not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon,

19  Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

20       B.   Claims for Relief

21            1.   Violation of Title VI- Racially Hostile
                   Educational Environment
22

23       The first claim for relief, brought against FRC, asserts

24  that Plaintiffs were subjected to a racially hostile educational

25  environment, in violation of Title VI, and that FRC did not take

26  steps to end the harassment.  Defendants argue that the claim

27  should be dismissed because Plaintiffs failed to plead facts

28  showing that they were harassed because of their race.  Further

4

1  Defendants contend that the allegations of the FAC do not show
2  severe or pervasive harassment, rather, the decision to drop
3  certain players from the team, or give certain players more time
4  on the field, are personnel management decisions, not instances
5  of discrimination.  Lastly, Defendants argue that there are no
6  allegations showing that FRC was deliberately indifferent to the
7  allegations of racial harassment, or that the harassment
8  interfered with Plaintiffs' educational pursuits.

9      Title VI mandates that "No person in the United States
10  shall, on the ground of race, color, or national origin, be
11  excluded from participation in, be denied the benefits of, or be
12  subjected to discrimination under any program or activity
13  receiving Federal financial assistance."  Title VI, 42 U.S.C.
14  § 2000d.

15      To state a claim for damages under Title VI, a plaintiff
16  must allege that (1) the entity involved is engaging in racial
17  discrimination; and (2) the entity involved is receiving federal
18  financial assistance.  Davison ex rel. Sims v. Santa Barbara
19  High School Dist., 48 F.Supp.2d 1225, 1229 (C.D. Cal. 1998).  A
20  plaintiff need not plead that he was an intended beneficiary of
21  the federally funded program.  Id.  While a plaintiff must prove
22  intent at trial, it need not be plead in the complaint.
23  Monteiro v. The Tempe Union High School Dist., 158 F.3d 1022,
24  1026 (9th Cir. 1998).  Courts look to the Department of
25  Education's guidance on Title VI, which mandates that the
26  following elements establish a violation of Title VI under the
27  hostile environment theory: (1) A racially hostile environment
28  existed; (2) the recipient had actual or constructive notice of

1   the racially hostile environment; and (3) the recipient failed

2   to respond adequately to redress the racially hostile

3   environment.  <u>See</u> <u>e.g.</u> <u>Davison</u>, *supra*; <u>Moneteiro</u>, 158 F.3d at

4   1033.  Racial harassment creates a hostile environment if it is

5   sufficiently severe that it would interfere with the educational

6   program of a reasonable person of the same age and race as the

7   victim.  <u>Monteiro</u>, 158 F.3d at 1033.  Racist attacks need not be

8   directed at the complainant in order to create a hostile

9   educational environment.  <u>Id.</u>

10      Here, the FAC has alleged that FRC receives federal

11  funding, Am. Compl., ¶ 11, and Plaintiffs have alleged that FRC

12  was engaging in racial discrimination, Am. Compl., ¶¶ 19-56.

13  The FAC alleges that FRC had notice of the discrimination, Am.

14  Compl., ¶ 21; ¶ 35, but failed to take steps to correct the

15  problem, Am. Compl., ¶¶ 34-36.

16      Defendants contentions that the alleged discrimination is

17  not sufficiently severe and pervasive, and that Plaintiffs have

18  not sufficiently shown a racist intent behind the hostility, are

19  premature.  A plaintiff does not need to prove intent until

20  trial. <u>Monteiro</u>, 158 F.3d at 1026.  Plaintiffs have alleged that

21  the harassment and discrimination was racially motivated,  Am.

22  Compl., ¶ 100, and further, the Court can infer that Plaintiffs

23  were being harassed based on their race from the wealth of

24  allegations in the FAC.  At this early stage in the pleadings,

25  the allegations of inferior treatment of African American

26  football players and a purging of African Americans from the

27  football team, coupled with the swearing, name-calling and

28  general hostility aimed at Plaintiffs, are sufficient to show

severe and pervasive racial discrimination for a hostile

educational environment claim.

Defendants also argue that the harassment did not interfere
with Plaintiffs' education and only affected Plaintiffs ability
to play on the football team.  However, the FAC contains
sufficient allegations that the harassment and discrimination
occurred at FRC and resulted in an environment permeated by
racial hostility, see e.g., Am. Compl., ¶ 27, affected Boyd's
ability to receive school credit for football courses, Am.
Compl., ¶ 66, and eventually led to Boyd dropping out, Page
taking online classes in South Carolina rather than stay at FRC,
and Hancock completing the academic program but like Boyd and
Page, losing the ability to pursue football scholarships at
four-year colleges.  These allegations are sufficient to show
that the hostile environment at FRC interfered with Plaintiffs'
education.  Plaintiffs have alleged sufficient facts to state a
claim for a racially hostile educational environment.
Accordingly, the motion to dismiss the first claim for relief is
DENIED.

2.   Violation of Title VI- Racial Discrimination in
     Education

The second claim for relief, brought against FRC, alleges
that FRC discriminated against Plaintiffs based on their race.
Plaintiffs assert that this discrimination was intentional, and
is evidenced by the deliberate change of the football team from
majority black to majority white, the verbal abuse and
discrimination directed at African American football players,
and FRC's deliberate indifference to the complaints of racism

7

and discrimination.  Defendants and Plaintiffs offer the same
arguments for and against this claim as were made for and
against the first claim for relief.  As discussed above, the
Court finds that the FAC sufficiently alleged race
discrimination in violation of Title VI.  Accordingly, the
motion to dismiss the second claim for relief is DENIED.

        3.    <u>Violation of 42 U.S.C. § 1981- Intentional Discrimination in the Making of a Contract</u>

    The third claim for relief, brought against Trueblood and
Johnson, asserts that Trueblood and Johnson interfered with
Plaintiffs' ability to make and enforce contracts, in violation
of 42 U.S.C. ¶ 1981.  Plaintiffs allege that they paid tuition
to FRC for educational services and in return FRC entered into a
contractual relationship to provide access to FRC programs,
activities and instruction.  Am. Compl., ¶ 117.  Because of
Trueblood and Johnson's malicious conduct in cutting them from
the football team, this violated the contract formed between
Plaintiffs and FRC.  Plaintiffs argue that when they entered
this contractual relationship with FRC, they expected equal
opportunity to be able to participate fully in the college's
athletic program on the same terms as the college's non-black
students.  In the past, the policy was to accept all returning
players who were academically eligible. Am. Compl., ¶ 50.
Trueblood and Johnson had the authority from FRC to recruit or
reject student athletes for the football team, and used this
authority to change the usual policy in a racially
discriminatory manner, preventing Plaintiffs from returning to
the football team and obtaining the benefits that they expected

1   from attendance at FRC.

2       Defendants contend that Plaintiffs have not alleged (and

3   cannot allege) that they had a contract to play football, and

4   therefore, being cut from the team did not violate any contract

5   rights.  Because the FAC alleges that Plaintiffs were told at

6   the end of the academic year that they would be contacted if

7   they were invited back to play on the team a second year,

8   Defendants assert that this clearly shows the lack of either an

9   express or implied contract involving participation on the

10  football team.  Plaintiffs' payments to FRC were in exchange for

11  academic instruction, and Defendants note there are no

12  allegations that they were denied academic instruction.

13      42 U.S.C. § 1981 provides:

14      That all persons shall have the same right . . . to make
        and enforce contracts . . . . as is enjoyed by white
15      citizens.  The statute defines, makes and enforces
        contracts to include the making, performance, modification
16      and termination of a contract, and the enjoyment of all
        benefits, privileges, terms and conditions of the
17      contractual relationship.

18  Flores v. Von Kleist, 739 F.Supp.2d 1236, 1256 (E.D. Cal. 2010)

19  (internal citations omitted).  To state a claim under Section

20  1981 a plaintiff must identify an "impaired contractual

21  relation," by showing that intentional racial discrimination

22  prevented the creation of a contractual relationship or impaired

23  an existing contractual relationship.  Schiff v. Barrett, 2010

24  WL 2803037, *4 (E.D. Cal. July 14, 2010) (internal citations

25  omitted).  A contract for educational services is a "contract"

26  for purposes of Section 1981.  Runyon v. McCrary, 427 U.S. 160,

27  172 (1976); Gratz v. Bollinger, 539 U.S. 244, 275 n.23 (2003).

28  Section 1981's protection extends to college athletics.  Pryor

1  v. National Collegiate Athletic Ass'n., 288 F. 3d 548 (3rd. Cir.

2  2002).   In Pryor, the Third Circuit held that the plaintiffs had

3  stated a claim under Section 1981 when they alleged that the

4  National Collegiate Athletic Association's rules regarding

5  academic eligibility to receive athletic scholarships was

6  discriminatory towards African American student-athletes and

7  interfered with their rights under contract.   Because of the

8  alleged discriminatory academic eligibility rule adopted by the

9  NCAA, the plaintiffs in Pryor were unable to reap the benefits

10 of their contracts, as they were prohibited from playing a sport

11 during their freshman year and consequently denied their

12 promised athletic scholarships.   However, the plaintiffs in

13 Pryor had actually signed contracts (National Letters of Intent)

14 to play a sport at their respective colleges and receive an

15 athletic scholarship, therefore Defendants argue that it is

16 distinguishable from the present case.   While Plaintiffs may

17 have believed that they would be invited back to play football

18 for a second year, the FAC does not allege that any contract to

19 that effect existed.   Nor have Plaintiffs alleged that they were

20 receiving athletic scholarships to play football at FRC.

21 Further, Plaintiffs do not allege that they were denied

22 admission to FRC or denied academic instruction.

23      Plaintiffs do however allege that because of a change in

24 policy (the decision not to invite back all academically

25 eligible football players to be on the team) they were denied

26 the benefits of the contract they formed with FRC, in which FRC,

27 Johnson and Trueblood contracted to provide equal opportunities

28 and benefits to Plaintiffs.   Am. Compl., ¶ 54.   Instead, the

1  team roster was limited and Plaintiffs were cut as part of an

2  intentional, racially discriminatory, effort by Defendants to

3  reduce the number of African American football players on the

4  FRC team.  Am. Compl., ¶ 51.  These allegations are sufficient

5  at this stage of the pleadings to show that Plaintiffs were

6  denied the benefits that they contracted for.  The Court has

7  already found that Plaintiffs have sufficiently alleged that

8  Defendants had intent to discriminate under Title VI, and the

9  intentional discrimination analysis is the same under Title VI

10 and Section 1981.  _Pryor_, *supra*.  Accordingly, Plaintiffs have

11 sufficiently stated a claim for violation of Section 1981.  The

12 motion to dismiss the third claim for relief is DENIED.

13          4.   Violation of 42 U.S.C. § 1983- Equal Protection
                 Clause of the Fourteenth Amendment
14

15      The fourth claim for relief, brought against Trueblood and

16 Johnson, alleges that Trueblood and Johnson violated Plaintiffs

17 rights under the Equal Protection clause of the Fourteenth

18 Amendment, by treating black student-athletes differently than

19 white student-athletes.  The FAC alleges that African American

20 student athletes were treated worse than non-black athletes.

21 Specifically, Trueblood is alleged to have announced his

22 intention to "change the face" of the football team, desiring

23 fewer African American and more whites on the team.  Am. Compl.,

24 ¶ 45.  Trueblood, along with Johnson, are alleged to have

25 implemented a policy of ridding the team of African American

26 players (including Plaintiffs) and replacing them with white

27 players.  Am. Compl., ¶¶ 45-50.  Plaintiffs assert that this was

28 done with the intent to discriminate against African Americans.

1    As a result of the discrimination, Plaintiffs allege they

2    suffered emotional distress and anxiety.

3         Defendants argue that the allegations against Trueblood and

4    Johnson are insufficient to show purposeful acts of

5    discrimination. Simply because more African American football

6    players were cut from the team than football players of other

7    ethnicities, Defendants argue this does not show intentional

8    discrimination giving rise to an equal protection claim.

9         To prevail in a Section 1983 civil action against state

10   actors for the deprivation of:

11        Rights, privileges, or immunities secured by the
          Constitution and laws, a plaintiff must show that
12        (1) acts by the defendants (2) under color of state law (3)
          deprived him of federal rights, privileges or immunities
13        and (4) caused him damage. Section 1983 is not itself a
          source of substantive rights, but merely provides a method
14        for vindicating federal rights elsewhere conferred.
          Accordingly, the conduct complained of must have deprived
15        the plaintiff of some right, privilege or immunity
          protected by the Constitution or laws of the United States.
16

17   Thornton v. City of St. Helens, 425 F.3d 1158, 1163-64 (9th Cir.

18   2005) (internal citations omitted).

19        The "Equal Protection Clause of the Fourteenth Amendment

20   commands that no State shall 'deny to any person within its

21   jurisdiction the equal protection of the laws,' which is

22   essentially a direction that all persons similarly situated

23   should be treated alike." City of Cleburne v. Cleburne Living

24   Ctr, Inc. 473 U.S. 432, 439 (1985) (internal citations omitted).

25   To state a claim under 42 U.S.C. § 1983 for a violation of the

26   Equal Protection Clause of the Fourteenth Amendment, a plaintiff

27   "must show that the defendant acted with an intent or purpose to

28   discriminate against the plaintiff based upon membership in a

1  protected class."  <u>T.A. ex rel. Amador v. McSwain Union</u>

2  <u>Elementary Sch. Dist.</u>, 2009 WL 1748793, at *8 (E.D. Cal. Jan.

3  18, 2009).  A plaintiff may satisfy this showing by alleging

4  four separate elements: (1) that the defendants treated

5  plaintiff differently from others similarly situated; (2) this

6  unequal treatment was based on an impermissible classification;

7  (3) the defendants acted with discriminatory intent in applying

8  this classification; and (4) plaintiff suffered injury as a

9  result of the discriminatory classification.  <u>Id.</u>

10      At this stage in the pleadings, when the Court must accept

11  as true the allegations of the FAC and draw all reasonable

12  inferences in Plaintiffs' favor, the FAC sufficiently alleges a

13  violation of Section 1983.  Plaintiffs have alleged that they

14  were discriminatorily cut from the team, along with numerous

15  other African American players, and that white students were not

16  rejected from the team in this manner.  Am. Compl., ¶¶ 46-48.

17  Plaintiffs have alleged that the discrimination was intentional,

18  and the allegations of the FAC regarding the high number of

19  black students cut from the team in comparison to the number of

20  white students cut from the team supports the allegations of

21  discrimination in violation of the equal protection clause.

22  Accordingly, the motion to dismiss the fourth claim for relief

23  is DENIED.

24      5.    <u>Violation of 42 U.S.C. § 1981- Intentional</u>
             <u>Discrimination in the Making of a Contract</u>
25

26      The fifth claim for relief, brought against White, alleges

27  that White's discriminatory treatment of African American

28  student-athletes violated the Plaintiffs' contract rights under

13

Section 1981.  Plaintiffs allege that when they paid tuition to
FRC for educational services, FRC, and by extension White,
entered into a contractual relationship with each plaintiff.
Am. Compl., ¶ 128. In rendering these services in a
discriminatory, harassing and hostile manner towards African
American students, White violated Section 1981's mandate against
discrimination in the making and enforcement of contracts.  Am.
Compl., ¶¶ 129-131.  Defendants raise the same arguments against
this claim for relief as were raised against the third claim for
relief, that no contract to play football existed.

However, the claim against White is not that he denied
Plaintiffs the ability to play football, but that when they
participated in FRC's football program he intentionally treated
them with racial hostility and discrimination.  As discussed
above, a contract for purposes of Section 1981 for services
exists between schools and the students.  Runyon, 427 U.S. at
172; Gratz, 539 U.S. at 275 n.23.  White's discrimination and
harassment impaired an existing contractual relationship,
preventing Plaintiffs from full and equal access to the benefits
of their contracts with FRC.  Plaintiffs have alleged sufficient
facts to state a claim that White violated their rights under
Section 1981, accordingly, the motion to dismiss the fifth claim
for relief is DENIED.

6.   Violation of 42 U.S.C. § 1983- Equal Protection
     Clause of the Fourteenth Amendment

The sixth claim for relief, brought against White, alleges
that by intentionally treating black students differently and
worse than non-black students, White violated the equal

14

1   Protection Clause of the Fourteenth Amendment.  Defendants raise

2   the same arguments for dismissal of the sixth claim for relief

3   that they raised for dismissal of the fourth claim, that

4   Plaintiffs fail to show intentional discrimination.  However, as

5   already discussed above, the allegations against White are

6   sufficient to show intentional discrimination.  The allegations

7   meet the necessary elements of an equal protection claim, as

8   discussed in the Court's analysis of the fourth claim.

9   Accordingly, the motion to dismiss the sixth claim for relief is

10  DENIED.

11

12                        III. ORDER

13       For the reasons set forth above, the motion to dismiss is

14  DENIED. Defendants shall file their Answer to the First Amended

15  Complaint within twenty (20) days of this Order.

16       IT IS SO ORDERED.

17  Dated: October 20, 2011

18                          JOHN A. MENDEZ,
                            UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28